WALLACE, Judge.
John Alan Cerny, Jr., appeals the order revoking his probation and his resulting sentences. Because the State failed to prove by a preponderance of the evidence the new law violation upon which the circuit court based the order revoking Mr. Cerny’s probation, we reverse.
I. THE FACTUAL AND PROCEDURAL BACKGROUND
On August 8, 2007, Mr. Cerny entered guilty pleas to the charges in circuit court case numbers 07-CF-10918, 07-CF-14421, and 07-CF-14452 in exchange for sentences of eighteen months’ probation on the charges.[1] Later, on January 10, 2008, Mr. Cerny entered a guilty plea to the charge in circuit court case number 07-CF-23328 for a sentence of thirty-six months’ probation.[2] On the same day, the circuit court also sentenced Mr. Cerny in the three other cases to new terms of thirty-six months’ probation based upon Mr. Cerny’s admission to violating his probation in those cases. The circuit court designated Mr. Cerny’s terms of probation in each of the four cases to run concurrently.
On August 5, 2009, Mr. Cerny’s probation officer filed an affidavit of violation of probation alleging that Mr. Cerny had violated his probation in all four cases by committing four new law violations. The alleged new law violations were aggravated battery, domestic violence by strangulation, false imprisonment, and tampering with a witness. The State alleged that each of the four offenses stemmed from an incident occurring on July 29, 2009, involving Mr. Cerny and his father, John Cerny, Sr.
After a hearing on the alleged violations of probation, the circuit court concluded that the State failed to establish by a preponderance of the evidence that Mr. Cerny had committed the new law violations of domestic violence by strangulation, false imprisonment, and tampering with a *611 witness. Accordingly, the circuit court dismissed the alleged violations of probation based upon those charges. Nevertheless, the circuit court found that Mr. Cerny had violated his probation by committing the new law offense of aggravated battery, and it revoked Mr. Cerny’s probation in all four cases based upon that new law violation. The circuit court imposed the maximum sentence of five years’ prison on each of Mr. Cerny’s underlying third-degree felonies. The circuit court also designated several of the sentences to run consecutively, with the result that Mr. Cerny received sentences totaling twenty years in prison. This appeal followed.
II. THE ARGUMENTS ON APPEAL
On appeal, Mr. Cerny makes two arguments. First, he argues that the circuit court erred in finding that he had violated his probation because (1) the State failed to prove that he committed the offense of aggravated battery and (2) the State relied exclusively on hearsay evidence to establish the alleged violation. Mr. Cerny concludes that the circuit court should have granted his motion to dismiss the alleged violation of probation at the conclusion of the State’s case. We need not discuss Mr. Cerny’s second argument because it is mooted by our disposition of his first argument.
III. THE STANDARD OF REVIEW AND OTHER PRELIMINARY MATTERS
Our review of an order of revocation of probation is for abuse of discretion. Boyd v. State, 1 So.3d 1186, 1187 (Fla. 2d DCA 2009). However, before the circuit court can exercise its discretion to revoke probation, the State must establish a violation of probation by the greater weight of the evidence. Id. Here, the State alleged — in pertinent part — that Mr. Cerny had committed the new law violation of aggravated battery. “The proper standard for finding a new law violation is whether a preponderance of the evidence establishes that the probationer committed the charged offense.... ‘Proof sufficient to support a criminal conviction is not required to support a judge’s discretionary order revoking’ probation.” Robinson v. State, 907 So.2d 1284, 1287 (Fla. 2d DCA 2005) (citations omitted) (quoting Robinson v. State, 609 So.2d 89, 90 (Fla. 1st DCA 1992)). Although hearsay is admissible in proceedings for revocation of probation, the circuit court may not base a revocation order solely upon hearsay evidence. Boyd, 1 So.3d at 1187.
IV.THE EVIDENCE PRESENTED AT THE HEARING
At the revocation hearing, the State established that Mr. Cerny and his father shared a home in Temple Terrace. Before the alleged incident, Mr. Cerny’s father had suffered a stroke. As a result, the father had trouble with communicating and walking.
The State presented the testimony of a sheriffs deputy. The deputy did not witness the incident that formed the basis for the charges. Instead, the deputy had been dispatched to a neighbor’s house on July 29, 2009, the date of the alleged incident. There, the deputy observed and spoke with Mr. Cerny’s father, the alleged victim of the aggravated battery. When the deputy arrived at the neighbor’s house, the father had several injuries to his arms and a laceration to the back of his head. Blood from the injuries was evident. In addition, the father appeared to be nervous and frightened.
The deputy testified that the abrasions on the father’s arms appeared to have been sustained in a fall and that the small cuts on his arms looked like he had been *612 struck with an object. The father told the deputy that he had sustained the injuries to his arms in an incident with Mr. Cerny. But when the prosecutor asked the deputy what the father had told her about how he had incurred the injuries, the circuit court sustained defense counsel’s hearsay objection. Thus the State was unable to elicit any hearsay evidence from the deputy concerning the father’s account of the incident.
After speaking with the father, the deputy went to the shared residence and observed what she assumed to be blood from the father on the walls, on the back door, and throughout the house. She took photographs of the father’s injuries and the scene at the house. The State introduced the photographs into evidence at the hearing.
The deputy did not see Mr. Cerny on the day of the incident, but she did see him the next day when he was arrested. At that time, she did not observe that Mr. Cerny had any injuries. The deputy learned that Jeffery Woods was present during the alleged incident. She testified that she interviewed Mr. Woods, but she did not testify concerning the substance of his account of the incident.
The State also called Mr. Cerny’s father to testify. After the father had begun to testify, the defense challenged the father’s competence as a witness. The circuit court agreed that the father was not competent to testify and struck his testimony. After the circuit court struck the father’s testimony, the State rested without presenting any additional evidence concerning the alleged incident. Next, Mr. Cerny moved to dismiss the alleged violation of probation on the ground that the State’s evidence was insufficient to establish a violation. The circuit court reserved ruling on the defense motion.
Mr. Cerny presented the testimony of the eyewitness, Jeffery Woods. Mr. Woods testified that during an argument between Mr. Cerny and his father, Mr. Cerny threw a telephone against a wall. The father then charged at Mr. Cerny and threw him against some cabinets. The collision with the cabinets split a scar over Mr. Cerny’s eye, which started bleeding. According to Mr. Woods, Mr. Cerny never struck his father or hit him with a sharp object. Instead, Mr. Cerny held his father’s arms to calm him down. Thus Mr. Woods identified the father rather than Mr. Cerny as the aggressor in the incident.
Mr. Woods also explained that the blood on the father’s arms came from old injuries that opened during the encounter. Mr. Woods did not see a laceration on the back of the father’s head, but he suggested that such a laceration could have occurred when the father fell in the shower. Mr. Woods testified that the blood at the house probably came from Mr. Cerny’s eye and from the father’s old wounds.
Y. THE CIRCUIT COURT’S RULING
At the conclusion of the case, Mr. Cerny renewed his motion to dismiss, arguing that the State had failed to present any evidence to establish that a crime had occurred. The circuit court found Mr. Woods’ testimony to be incredible but accepted his testimony to the extent that it established that there was an altercation between Mr. Cerny and his father. Noting that there was an unexplained injury to the back of the father’s head, the circuit court stated, “I’m going to find that [Mr. Cerny] hit him or pushed him back and hit him in the head. I don’t have any doubt that that occurred.” The circuit court denied the defense motion to dismiss the alleged violation of probation based upon the commission of an aggravated battery *613 and concluded that the State had established that Mr. Cerny had violated his probation by committing an aggravated battery on his father.
VI. DISCUSSION
Mr. Cerny’s father’s statement to the deputy that he received his injuries in an incident involving his son was in evidence at the revocation hearing. With regard to this hearsay testimony, Mr. Cerny devotes considerable attention on appeal to discussing cases that address the use of hearsay together with direct evidence to prove a probationer’s commission of a new law violation. But a review of the record reveals that the State did not present any proof — through either hearsay or direct evidence — that any kind of battery occurred. To establish that a battery occurred, the State had to show that Mr. Cerny intentionally touched or struck his father against his will or intentionally caused him bodily harm. See § 784.08(1), Fla. Stat. (2009). There was no such evidence. Similarly, to prove that an aggravated battery occurred, the State had to show that in committing a battery against his father, Mr. Cerny intentionally or knowingly caused his father great bodily harm, permanent disability, or permanent disfigurement. See § 784.045(l)(a)(l). Alternatively, the State had to show that in committing a battery against his father, Mr. Cerny used a deadly weapon. See § 784.045(l)(a)(2). Once again, there was no such evidence.
Significantly, there was no evidence to support the circuit court’s finding that Mr. Cerny hit or pushed his father back and hit him in the head. We recognize that the circuit court could properly find that Mr. Woods’ testimony for the defense was not worthy of belief. See Shaw v. Shaw, 384 So.2d 13, 16 (Fla.1976). But the circuit court’s decision to reject substantially all of Mr. Woods’ testimony as incredible did not cure the deficiencies in the State’s proof. Because the State failed to establish by a preponderance of the evidence that Mr. Cerny committed an aggravated battery on his father, the circuit court erred in revoking Mr. Cerny’s probation based on that alleged new law violation. See Robinson, 907 So.2d at 1287.
VII. CONCLUSION
For the foregoing reasons, we reverse the order revoking Mr. Cerny’s probation and the resulting sentences. Under the circumstances of this case, double jeopardy does not bar a second revocation proceeding on remand based on the filing of a new affidavit alleging the same violations, see Boyd v. State, 1 So.3d 1186, 1188 (Fla. 2d DCA 2009); Reeves v. State, 366 So.2d 1229, 1230 n. 2 (Fla. 2d DCA 1979); Scott v. State, 937 So.2d 746, 748-49 (Fla. 4th DCA 2006), provided that Mr. Cerny’s probationary terms have not expired, see Hernandez v. State, 33 So.3d 143, 145 (Fla. 2d DCA 2010); Humbert v. State, 933 So.2d 726, 728 (Fla. 2d DCA 2006); Sharpston v. State, 895 So.2d 1225, 1226 (Fla. 2d DCA 2005).
Reversed and remanded.
DAVIS, J., Concurs.
ALTENBERND, J., Concurs specially.

. Mr. Cerny received a sentence of time served in case number 07-CF-10918 on a charge of driving while license was suspended or revoked. The circuit court adjudicated Mr. Cerny to be guilty on each of the offenses in all three cases.

. The circuit court adjudicated Mr. Cerny to be guilty of the offenses charged in case number 07-CF-23328.